U.S. Bank Natl. Assn. v Creative Encounters LLC (2020 NY Slip Op 02844)





U.S. Bank Natl. Assn. v Creative Encounters LLC


2020 NY Slip Op 02844


Decided on May 14, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 14, 2020

529451

[*1]U.S. Bank National Association, as Trustee, Respondent,
v
Creative Encounters LLC et al., Appellants, et al., Defendants.

Calendar Date: February 10, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Fairbanks Fletcher Law PLLC, Saratoga Springs (James W. Hyde IV of counsel), for appellants.
Gross Polowy, LLC, Westbury (Bridget C. Bidonde of counsel), for respondent.



Lynch, J.P.
Appeal from an order of the Supreme Court (Melkonian, J.), entered April 24, 2019 in Rensselaer County, which, among other things, denied a motion by defendants Creative Encounters LLC and Paula Jo Tufano for summary judgment dismissing the complaint against them.
In May 2005, defendant Paula Jo Tufano and her husband borrowed a sum of money from plaintiff's predecessor in interest and executed a note secured by a mortgage on the property located in the Town of East Greenbush, Rensselaer County. In June 2008, Tufano borrowed an additional sum and executed a note secured by a mortgage on the same property. The two loans were consolidated in a consolidation, extension and modification agreement (hereinafter CEMA), which reflected a total unpaid principal balance of $182,000. The CEMA was assigned to BAC Home Loans Servicing, L.P. In August 2010, BAC commenced a foreclosure action arising from Tufano's failure to make the October 2009 payment. Thereafter, Tufano transferred her interest in the property to defendant Creative Encounters LLC by a quitclaim deed.
In September 2013, Supreme Court (Ceresia Jr., J.) granted BAC's motion to discontinue the action without prejudice "due to title insurability issues." In October 2014, Nationstar Mortgage, LLC — the second assignee of the CEMA — commenced a second action to foreclose on the mortgage. In March 2016, this action was also discontinued when Supreme Court (McGrath, J.) granted Nationstar's motion to discontinue without prejudice "due to title insurability issues." The CEMA was assigned to plaintiff, which commenced this third foreclosure action in April 2017 against Tufano and Creative Encounters (hereinafter collectively referred to as defendants), among others. Thereafter, Supreme Court (Melkonian, J.) denied defendants' motion for summary judgment, seeking to dismiss the complaint as time-barred, and granted plaintiff's motion for a judgment of foreclosure and sale. Defendants appeal.
Where, as here, a mortgage debt has been accelerated by the commencement of an action seeking the entire sum due, the six-year statute of limitations begins to run (see Lavin v Elmakiss, 302 AD2d 638, 639 [2003], lv dismissed 100 NY2d 577 [2003], lv denied 2 NY3d 703 [2004]). Once a debt has been accelerated, a lender's "election . . . could be revoked only through an affirmative act occurring within the statute of limitations period" (id.). To that end, "acceleration notices must be clear and unambiguous to be valid and enforceable . . . [and] de-acceleration notices must also be clear and unambiguous to be valid and enforceable" (Milone v US Bank N.A., 164 AD3d 145, 153 [2018] [internal citations omitted], lv dismissed 34 NY3d 1009 [2019]).
Here, defendants met their initial burden of demonstrating that the action was untimely. The statute of limitations was triggered in August 2010 with the commencement of the first action, and this third action was commenced more than six years later in April 2017 (see Bank of N.Y. Mellon v Craig, 169 AD3d 627, 629 [2019]; Freedom Mtge. Corp. v Engel, 163 AD3d 631, 633 [2018], lv partially granted and partially dismissed 33 NY3d 1039 [2019]).[FN1] As such, the burden shifted to plaintiff to raise a question of fact as to whether the action was timely. In our view, plaintiff failed to do so.
In Milone v US Bank N.A. (164 AD3d at 154) — a case addressing whether a letter from the lender effected a valid
de-acceleration — the Second Department reasoned that "a
de-acceleration letter is not pretextual if . . . it contains an express demand for monthly payments on the note, or, in the absence of such express demand, it is accompanied by copies of the monthly invoices transmitted to the homeowner for installment payments, or . . . other forms of evidence demonstrating that the lender was truly seeking to de-accelerate and not attempting to achieve another purpose under the guise of de-acceleration" (id.). The letter under review in Milone stated that the lender "hereby de-accelerates the maturity of the [l]oan, withdraws its prior demand for immediate payment of all sums secured by the [s]ecurity [i]nstrument and re-institutes the loan as an installment loan" (id. at 149 [quotation marks omitted]; see Wells Fargo Bank, N.A. v Liburd, 176 AD3d 464, 464 [2019]). The Second Department determined in Milone that this letter met the "clear and unambiguous" criteria for a valid de-acceleration notice and raised a genuine issue of fact as to whether the lender's de-acceleration notice was timely (Milone v US Bank N.A., 164 AD3d at 153-154).
Here, by comparison, the voluntary discontinuance of the first two actions, without more, did not constitute an affirmative revocation of the initial acceleration of the debt (see Specialized Loan Servicing Inc. v Nimec, ___ AD3d ___, ___, 2020 NY Slip Op 02688, *1 [2020]; Ditech Fin., LLC v Naidu, 175 AD3d 1387, 1389-1390 [2019], lv granted 34 NY3d 910 [2020]; HSBC Bank, N.A. v Vaswani, 174 AD3d 514, 515 [2019]; Bank of N.Y. Mellon v Craig, 169 AD3d at 627; Freedom Mtge. Corp. v Engel, 163 AD3d at 632-633). That is particularly so because plaintiff's predecessors in interest moved to discontinue each action due to title concerns, without addressing the prospect of revoking the acceleration and resuming installment payments (see Ditech Fin., LLC v Naidu, 175 AD3d at 1389). We recognize that, by letter dated November 15, 2012, Nationstar, identifying itself as "[s]ervicer of the . . . loan, on behalf of Nationstar . . ., as [c]reditor to whom the debt is owed," informed Tufano that she was in default in the amount of $62,042, warned that the balance would continue to accrue and advised that she could cure the default with a direct payment of the arrearage and the next installment due December 1, 2012. No mention was made of the pending action, and it is worth noting that the mortgage was not assigned to Nationstar until January 2013. The motion to discontinue was not made until June 2013 and was predicated on a title flaw, not the November 2012 letter. The same approach was followed in Nationstar's August 13, 2015 letter, which informed Tufano of her right to cure her default with a direct $121,486 payment. Once again, the letter made no mention of the then pending second action. To the contrary, the letter cautioned that, absent timely payment, Nationstar "may acquire the property by means of foreclosure and sale" as if it had not already embarked on that course through the pending action. Four months later, plaintiff moved to discontinue the second action due to title issues. In a supporting affirmation, plaintiff's counsel represented that plaintiff had previously sought to discontinue the action by stipulation, but did not elaborate as to the basis for the stipulation or refer to the August 2015 letter. This sequence does not establish a
de-acceleration of the loan. The default letters and motions to discontinue were too attenuated to be considered joint proposals, and no affirmative representation was ever made that the lender was de-accelerating the loan. By comparison, the lender's letter in Milone affirmatively de-accelerated the loan (Milone v US Bank N.A., 164 AD3d at 149).
After the second action was discontinued, plaintiff's representative sent two letters to Tufano. The first letter, dated November 3, 2016, provided the 90-day notice required under RPAPL 1304 and demanded payment of $87,009.49 by November 30, 2016 to cure the default. The second letter, dated January 5, 2017 and captioned "Notice of Intent to Foreclose," advised that Tufano had 30 days to cure a default dating back to May 1, 2011 in the amount of $89,518.61. These letters do not indicate a clear and unambiguous return to an installment payment plan and, for all practical purposes, do not actually evidence any real intent to de-accelerate the loan. In effect, "plaintiff simply put defendant[s] on notice of its obligation to cure a
. . . default and then promptly embarked on the notices required to initiate a [third] foreclosure action" (Wells Fargo Bank, N.A. v Portu, 179 AD3d 1204, 1207 [2020]). In our view, these notices do not constitute affirmative actions to de-accelerate the mortgage (see id.; compare Fed. Natl. Mtge. Assn. v Rosenberg, 180 AD3d 401, 402-403 [2020]). It follows that Supreme Court erred in denying defendants' motion for summary judgment dismissing the action as time-barred. As such, plaintiff's motion for a judgment of foreclosure and sale should not have been granted.
Clark and Reynolds Fitzgerald, JJ., concur.
Pritzker, J. (dissenting).
We respectfully dissent because we find that the debt was, as a matter of law, de-accelerated within the applicable statute of limitations and the action is not time-barred. "The six-year statute of limitations in a mortgage foreclosure action begins to run from the due date for each unpaid installment unless the debt has been accelerated; once the debt has been accelerated by a demand or commencement of an action, the entire sum becomes due and the statute of limitations begins to run on the entire mortgage" (Lavin v Elmakiss, 302 AD2d 638, 639 [2003] [citations omitted], lvs denied 100 NY2d 577 [2003], 2 NY3d 703 [2004]). "Where, as here, a debt has been accelerated, a lender's election could be revoked only through an affirmative act occurring within the statute of limitations period" (Wells Fargo Bank, N.A. v Portu, 179 AD3d 1204, 1206 [2020] [internal quotation marks, ellipsis and citation omitted]). Accordingly, the issue on appeal is whether the voluntary discontinuance, together with letters and notices from Nationstar Mortgage, LLC and its successor in interest, constituted affirmative acts that revoked the election to accelerate the debt.[FN2] If so, the debt was de-accelerated and the statute of limitations began to run from the due date for each unpaid installment, unless the debt is again accelerated.
To that end, in a foreclosure action, post-acceleration renewal of the six-year statute of limitations is tied directly to the definition and effect of de-acceleration. In our view, de-acceleration occurs when the lender offers the borrower a path to reinstate future installment payments, regardless of whether the payment of arrears is also required (see Federal Natl. Mtge. Assn. v Rosenberg, 180 AD3d 401, 402 [2020]). When determining whether a debt has been de-accelerated, we must look to the objective effect [FN3] upon the borrower of the actions taken by the lender incident to the voluntary discontinuance (see Wells Fargo Bank, N.A. v Portu, 179 AD3d at 1207). Thus, the salient inquiry is whether the lender, incident to the voluntary discontinuance, agreed to take less than the accelerated amount, such as the amount past due, and allow the borrower to recommence the periodic payments.
Here, the first foreclosure action was commenced by Nationstar's predecessor in interest on August 9, 2010. In September 2013, the action was discontinued. Prior to the discontinuance, defendant Paula Jo Tufano conveyed the real property to defendant Barbara Johnston, without consideration, and provided Johnston a power of attorney. Then, four months after the conveyance, Tufano filed bankruptcy, abandoned the property to the bankruptcy trustee and obtained a chapter 7 discharge of personal liability under the mortgage. Johnston is therefore the title owner, and plaintiff's remedy is now a purely in rem action. Thereafter, a second foreclosure action was commenced by Nationstar in October 2014. Then, in August 2015, Nationstar sent a letter to Tufano, informing her of the right to cure the default, setting forth the amount of the arrears and specifically providing the option to reinstate the mortgage. The letter also reminded Tufano that the next payment was due on September 1, 2015, as well as the need to make further installment payments. Then, in January 2016, Nationstar moved to discontinue the action,[FN4] which was granted in March 2016. It is our opinion that the letter regarding Tufano's right to cure the default, together with the voluntary discontinuance, served to renew the installment payments at the option of Tufano and, therefore, constituted affirmative acts revoking the prior acceleration of the debt well within the six-year statute of limitations (see NMNT Realty Corp. v Knoxville 2012 Trust, 151 AD3d 1068, 1070 [2017]; compare U.S. Bank Trust, N.A. v Ellis, 181 AD3d 451, 453 [2020]).
After the discontinuance, these efforts were continued by plaintiff, Nationstar's successor in interest, who sent notices to Tufano in November 2016 and January 2017, consistently requesting only the default amount already due rather than the accelerated amount. This simply means that if the default amount was paid, plaintiff would be precluded from commencing a foreclosure action unless an installment payment was missed. Thus, it is our opinion that plaintiff is de-accelerating because, instead of continuing to call the entire loan due and refusing to engage in any future debtor-creditor relationship absent full payment,[FN5] it offered to reinstate the loan if Tufano paid what was already owed and began to make current payments. Further, the November 2016 and January 2017 letters sent by plaintiff indicate that the loan had been de-accelerated by stating that it may be accelerated in the future. Contrary to the majority's opinion, these acts are not attenuated, but are unequivocal acts of de-acceleration. Further, we do not agree with decisional law from other Departments that requires anything more, particularly when the original acceleration was by commencement of a foreclosure action that was voluntarily discontinued by motion. Accordingly, plaintiff's third action, commenced in April 2017, was not time-barred, and Supreme Court's denial of the motion for summary judgment by Tufano and defendant Creative Encounters LLC should be affirmed.
Devine, J., concurs.
ORDERED that the order is reversed, on the law, with costs, plaintiff's motion denied, motion by defendants Paula Jo Tufano and Creative Encounters LLC granted, and complaint dismissed.



Footnotes

Footnote 1: The record indicates that Tufano filed a chapter 7 bankruptcy petition on October 16, 2013, at which point an automatic stay pursuant to 11 USC § 362 went into effect. The stay was lifted upon the issuance of a discharge order on April 15, 2014. Even allowing for this six-month tolling of the statute of limitations, which would have extended plaintiff's time to commence the third action into February 2017, that action was commenced after the six-year statute of limitations had already expired.

Footnote 2: We need not decide whether a voluntary discontinuance in and of itself is a sufficient affirmative act to revoke the election to accelerate the debt.

Footnote 3: The legal effect of de-acceleration reinstates the installment status of the loan, regardless of the motive.

Footnote 4: The underlying motion papers indicate that, prior to requesting court intervention, Nationstar, on multiple occasions, sought to discontinue the action by way of a stipulation.

Footnote 5: At the time the third action was commenced, the total due on the loan was in excess of $250,000.